UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEVEN COX, THOMAS BINGHAM, EDWARD
KALIN, MICHAEL McCARTY, and ROBERT
SCOTT FELDMAN,

                   Plaintiffs,

          vs.                                          5:08-CV-387
                                                       (NAM/ATB)
ONONDAGA COUNTY SHERIFF'S DEPARTMENT;
KEVIN E. WALSH, in his individual and official capacity;
JOHN WOLOSZYN; in his individual and official capacity;
DEPUTY SHERIFF O'DELL WILLIS, in his individual and
official capacity; ONONDAGA COUNTY; NICHOLAS
PIRRO, ONONDAGA COUNTY EXECUTIVE; JOANNIE
MAHONEY, ONONDAGA COUNTY EXECUTIVE,

                   Defendants.
_____

APPEARANCES:                          OF COUNSEL:

Bosman Law Firm                       A.J. Bosman, Esq.
*Counsel for Plaintiffs*
6599 Martin Street
Rome, New York  13440

Gordon J. Cuffy                       Mary J. Fahey
County Attorney                       Assistant County Attorney
John H. Mulroy Civic Center, 10th Floor
421 Montgomery Street
Syracuse, New York  13202

Sugarman Law Firm                     Laura L. Spring, Esq.
*Counsel for Defendant Woloszyn*
211 West Jefferson Street
Syracuse, New York  13202

**Norman A. Mordue, U.S. District Judge**

                   MEMORANDUM-DECISION and ORDER

I.        INTRODUCTION

The present case involves a claim by a number of white or Caucasian Deputy Sheriffs employed by the Transport Unit of Onondaga County Sheriff's Department who contend they were discriminated against on the basis of their race.  Specifically, these Deputies alleged that after they shaved their heads in solidarity with a fellow deputy who was undergoing chemotherapy for cancer treatment, they were accused by an African American Deputy of being "skinheads" and other African American employees of being racists.  Plaintiffs alleged that they were unlawfully retaliated against for complaining of employment discrimination based on race pursuant to Title VII of the Human Rights Act of 1964, as amended, 42 U.S.C. 2000 et seq. ("Title VII"), and the New York Human Rights Law ("NYHRL").  Plaintiffs also alleged claims pursuant to 42 U.S.C §§ 1981, 1983, 1985 and 1988; the Fourteenth Amendment to the United States Constitution and Article, Section 11 of the New York State Constitution.

II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

According to the allegations in plaintiffs' complaint, plaintiffs Steven Cox, Thomas Bingham, Michael McCarty and Robert Scott Feldman shaved their heads "in a show of friendship and comradery" to support fellow deputy and plaintiff, Edward Kalen, who had lost his hair as a result of undergoing chemotherapy treatment for cancer.  Thereafter, Willis and several other African American deputies approached plaintiffs and inquired regarding the reason why plaintiffs' heads had been shaved.  "Statements were made labeling the plaintiffs 'skin heads' and derogatory comments soon followed accusing the plaintiffs of anti-Black remarks and racial epithets."  "Over the course of the next several months, this rumor gained force and promoted a dangerous work environment."  Inmates threatened and verbally abused plaintiffs, and the African American deputies became distant and distrustful of plaintiffs.  Plaintiffs were further subject to

2

segregation at work, "and the reality that they would no longer be considered for promotion and/or raises."  Willis's actions "fanned" this continuing conduct, which "caused a racially hostile and unsafe working environment."

On or about August 26, 2005, plaintiffs, along with an additional complainant, Lieutenant James Raus, made a complaint of racial harassment to the Onondaga County Sheriff's Department on a County Complaint "blue" form.  Lt. Raus was the commander of the Transport Unit and was responsible for initial investigations of harassment complaints filed by subordinate employees, including plaintiffs.  According to defendants, Assistant Chief Wasilewski directed Captain Woloszyn to investigate the complaint filed by the plaintiffs.  Captain Woloszyn discussed the complaint with Lieutenant Raus.  According to Woloszyn, Wasilewski was angry that Raus had signed the complaint form as a complainant since he was a Lieutenant and should have investigated plaintiffs complaint in the first instance as a higher officer.  Thereafter, Lieutenant Raus withdrew as a complainant.  Although Raus was told to interview Deputy O'Dell Will, Raus had Sergeant Marshall interview Willis who denied any involvement with making any statements about plaintiffs or Lieutenant Raus being skinheads.  Indeed, Willis stated that he knew that plaintiffs and Raus had shaved their heads in support of Deputy Kalin and had offered to help Kalin by doing chores around his chouse.  Between September 29, 2005, and October 12, 2005, plaintiffs Cox, Feldman, Kalin, Bingham and McCarty filed complaints of discrimination with the EEOC.

On October 21, 2005, Captain Woloszyn submitted a memorandum to Assistant Chief Wasilewski regarding his investigation of the complaint made by plaintiffs submitted on the County form.  Plaintiffs assert that no investigation was done by Wasilewski.  In any event, as part of the response by the Law Department of Onondaga County to the EEOC, Wasilewski

submitted a letter stating that the charges made by the plaintiffs had no merit and could not be substantiated.  This statement was made on reliance on the investigation done by Captain Woloszyn.  The letter also stated that investigation of the complaints by plaintiffs would also be referred to the Onondaga County Sheriff's Office Professional Standards Unit ("PSU") for review.

The PSU received the assignment to investigate the case on November 11, 2005.  The matter was assigned to Sergeant Smith.  On December 12, 2005, the EEOC, closed its investigation of plaintiffs' complaints and issued a notice of right to sue.  However, plaintiffs did not file suit as authorized within 90 days of obtaining their notice of right to sue from the EEOC.  Plaintiffs did not serve timely Notices of Claim against the Onondaga County at any time concerning their allegations of racial discrimination in the course of employment with the Sheriff's Department.

Sergeant Smith gathered various documents and interviewed all of the plaintiffs as well as other deputies in the course of his PSU investigation of plaintiffs' complaint.  PSU issued two memorandums after its investigation.  The first, dated, January 26, 2006, from Captain Peter Bailey to Undersheriff Warren Darby related to allegations that Captain Woloszyn had failed to ensure plaintiffs' claims were properly investigated and that he had submitted misleading documentation.  Sergeant Smith conducted thorough interviews of all plaintiffs in the course of his PSU investigation in the presence of their Union Representative.  When he spoke to Deputy Cox, Cox told Smith he had no direct knowledge of anyone calling him or the other deputies skinheads.  Cox only knew that other deputies had told him that he and the other plaintiffs were being referred to as skinheads.  Cox specifically told Smith that no one had called him a skinhead to his face.

4

During his interview with Sergeant Smith, Deputy Feldman also said that no one had called him a skinhead to his face.  Feldman told Smith that a rumor had circulated that defendant Willis had referred to the plaintiffs as skinheads.  Feldman told Smith that no inmates had accused him of being a racist or a skinhead since he had shaved his head.  Deputy Kalin told Smith that he had no direct knowledge of anyone referring to him or any of the other deputies as skinheads.  Kalin said he had been approached by some deputies regarding his shaved head but those deputies knew he was not a skinhead and they told him they were sorry that some people had started rumors about him because they knew he was being treated for cancer.  One deputy whose name Kalin could not recall told him that defendant Willis was the person that had referred to the plaintiffs as skinheads.

Deputy Bingham told Sergeant Smith that no one ever accused him of being a skinhead. Bingham also told Smith that he was never approached by anyone who inquired as to why he had shaved his head and none of the inmates he transported called him a skinhead or a racist. Sergeant Smith averred that Deputy McCarty told him that him that no one accused him of being a skinhead or a racist to his face.  However, McCarty reported that on August 24, 2005, Deputy Art Paul told him that defendant Willis had started a rumor back in the jail that the deputies that shaved their heads were skinheads.  McCarty also said that two other African-American deputies asked him why he had shaved his head and after he explained that it was in support of Deputy Kalin, they asked no further questions.  Deputy McCarty stated that the day after he spoke to Deputy Paul about the alleged rumor started by defendant Willis, he was moving inmates and one of the inmates asked him if he was "one of those skinheads."  Deputy McCarty never responded to the inmate's inquiry and didn't report the incident to a supervisor because he claims that he never gave it much thought.

When Sergeant Smith interviewed defendant Willis, he stated that he was not aware of the skinhead issue until he was interviewed by Sergeant Marshall.  Deputy Willis said he never said anything or suggested to anyone in the Unit that the plaintiffs were skinheads or racists.  Indeed, defendant Willis said he was aware of Deputy Kalin's illness and although he was not willing to shave his own head in support of his fellow deputy, he had offered to do chores around Kalin's house and help out in other ways.

In the first PSU memorandum, Captain Bailey stated that Captain Woloszyn failed to conduct a through investigation of plaintiffs' complaints, that the report he submitted contained inaccurate information and that he failed to cooperate fully with the subsequent PSU investigation.  As a result of said report, Captain Bailey concluded that Captain Woloszyn violated eight of the policies and procedures of the Onondaga County Sheriff's Office as contained in the Duty Manual.  Captain Woloszyn was served with charges on February 10, 2006, which he denied.  Pursuant to a Confidential Settlement Agreement, dated May 10, 2006, Captain Woloszyn was demoted from Captain to Deputy Sheriff and worked the A Watch (11 P.M. -7 A.M. shift) in the Justice Center until he was eligible to retire.

Captain Bailey authored a second memorandum dated January 31, 2006, pertaining solely to the conduct of plaintiffs McCarty and Cox.  Specifically, the memorandum addressed the contradictions in the sworn statements made to the EEOC concerning alleged racist comments made by certain deputies concerning "skinhead" remarks, etc., as contrasted with the statements made to Sergeant Smith by these deputies during his PSU investigation.  In the case of Deputy Cox, he stated in his verified complaint to the EEOC sworn to on September 29, 2005, that he had been "confronted by an African-American Deputy in [his] unit who accused [him] of belonging to the 'skinheads.'  [The deputy's] continued remarks that [Cox was] a skinhead has resulted in

6

other African-American employees believing that [Cox] was a racist." This statement was not consistent with what Deputy Cox stated during his interview with Sergeant Smith on December 20, 2005, in which he stated that no one had called him a racist or skinhead to his face.

With respect to Deputy McCarty, he also stated in his verified complaint to the EEOC sworn to on October 12, 2005, that he had been "confronted by an African-American deputy in [his] unit who accused [him] of belonging to the 'skinheads.' His continued remarks that [McCarty was] a skinhead has resulted in other African-American employees believing that [he was] a racist." This statement was also not consistent with what McCarty told Sergeant Smith during his interview on December 15, 2005. At that time, McCarty told Smith that "no one had accused him of being a skinhead or a racist to his face." Captain Bailey concluded that the statements made by the two deputies in their sworn EEOC complaints were not consistent with what they later told to Sergeant Smith when interviewed directly about the matter. Consequently, Bailey stated that Cox and McCarty had engaged in improper conduct in violation of the policies and procedures of the Onondaga County Sheriff's Office which specifically prohibited members from submitting a report or document which contains information known by the member to be inaccurate, false or improper. Captain Bailey left it up to Sheriff Walsh to determine whether charges should be brought against the two Deputies. Sheriff Walsh subsequently decided that no charges were warranted against Cox and McCarty.

On February 16, 2006, plaintiffs filed a second charge of discrimination with the EEOC alleging that they had been retaliated against by the Sheriff's Department after completion of the PSU investigation. Specifically, they claimed that they were threatened with disciplinary action for having allegedly provided false information in their first complaints to the EEOC. Having failed to file an initial lawsuit against defendants within 90 days of receiving their first Notice of

Right to Sue from the EEOC, plaintiffs filed the present action on April 8, 2008.  They asserted that they were victims of unlawful retaliation in violation of Title VII and the NYHRL for having complained of racial discrimination in their employment.  They also alleged the various other federal and constitutional claims as set forth above.

In a previous Memorandum-Decision and Order, Senior Judge Neal P. McCurn of this Court granted in part and denied in part a motion to dismiss filed by defendant Deputy O'Dell Willis.  The Court granted defendant Willis' motion to dismiss plaintiffs' Title VII claims on the ground that individuals such as Willis are not subject to liability under Title VII, but denied the motion to dismiss plaintiffs' NYHRL claims on the basis that they had adequately pled an "aiding and abetting" claim against him.  The Court dismissed the claims under 42 U.S.C. § 1981 as against all defendants *sua sponte*.  The Court also granted defendant Willis' motion to dismiss plaintiffs' claims for violation of equal protection under 42 U.S.C. § 1983 as well as the equal protection claim under the New York State Constitution.  The County defendants along with defendant Woloszyn move for summary judgment dismissing the complaint in its entirety.  Plaintiffs oppose defendants' motion and cross-move for summary judgment on their Title VII retaliation claims.

III.     DISCUSSION

A.     Applicable Legal Standard

Summary judgment is appropriate when there is no genuine issue with regard to any material fact, and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

8

(1986).  When deciding a summary judgment motion, the Court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

B.     Summary of Plaintiffs' Claims

Defendants have moved for dismissal of a number of claims which plaintiffs do not oppose in their motion papers.  Specifically, plaintiffs do not oppose dismissal of the claims against any of the defendants in their official capacities.  Further, plaintiffs do not object to dismissal of the NYHRL claim against defendant Onondaga County.  Plaintiffs do not oppose the dismissal of the Title VII claims against any of the individually named defendants.  Finally, plaintiffs do not oppose dismissal of the claims of hostile work environment or discrimination arising from the September 2005 EEOC complaint.

Remaining is a municipal liability claim against Onondaga County under 42 U.S.C. § 1983, an "aiding and abetting" claim against defendant O'Dell Willis under the NYHRL, a retaliation claim against defendants under Title VII, a conspiracy claim against defendants under 42 U.S.C. § 1985 and a punitive damages claim against the individual defendants under 42 U.S.C § 1983.  In addition, plaintiffs seek to overturn the Court's previous decision which dismissed the plaintiffs' claim under 42 U.S.C. § 1981 against all defendants.  Plaintiffs have also filed a cross-motion for summary judgment on the Title VII retaliation claim.

C.     Plaintiffs' 42 U.S.C. § 1983 Claim against the County

Plaintiffs brought an equal protection claim against the County under 42 U.S.C. § 1983 alleging violations of their Fourteenth Amendment rights to be free from discrimination.  Section 1983 allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the

United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

To establish a Section 1983 claim against the County, plaintiffs must establish that the discriminatory activities alleged were performed pursuant to an official policy or custom. *Olsen v. County of Nassau*, 2008 WL 4838705, at \*7 (E.D.N.Y. Nov. 4, 2008).  To show an official policy or custom, a plaintiff must show that: (1) the discrimination was so persistent or widespread as to constitute a custom or usage with the force of law; or (2) the discrimination conducted by subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials. *Carmody v. City of New York*, 2006 WL 3317026, at \*17 (S.D.N.Y.  Nov. 13, 2006) (citing *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)).

In the present case, plaintiffs assert that "Chief Wasilewski" was aware of their complaints of a racially hostile work environment and that he met with defendant Woloszyn and discussed the "blue form" complaints which they had filed with the Sheriff's Department.  Although defendant Woloszyn testified that Wasilewski directed him to look into plaintiffs' allegations, plaintiffs contend that after Woloszyn met with "Chief Wasilewski," Woloszyn then told the plaintiffs to "let it go," that it was a "big misunderstanding," and that "he didn't mean anything by what he said."  Plaintiffs assert that although Woloszyn did not say who "he" was, he must have meant defendant Willis since Willis was the only person mentioned in plaintiffs' blue form discrimination complaint.  Plaintiffs argue that given these alleged admissions and the fact that defendant Willis is "good friends" with Wasilewski, a reasonable juror could conclude that Wasilewski directed Woloszyn not to investigate plaintiffs' complaints.  Plaintiffs also assert that it is clear from defendant Woloszyn's deposition that "Chief Wasilewski" was more concerned

10

with "getting" Lieutenant Raus than addressing plaintiffs' complaints.

In the first instance, the County defendants correctly note that "Chief Wasilewski" is an Assistant Chief who's decision making authority in this case is far from clear. The Supreme Court has held that municipal liability attaches where the decisionmaker possesses final authority to establish policy with respect to the action ordered and where a deliberate choice to follow a course of action was made from among various alternatives by the official. *See Pembaur v. Cincinnati*, 475 U.S. 469 (1986). Based upon the record, the Court is unable to conclude, as a matter of law, that Assistant Chief Wasilewski had final policymaking authority within his department as the plaintiffs assert. Neither party has submitted the relevant Onondaga County Sheriff's Office Rules and Regulations that would establish exactly where final policymaking authority rested. *See Verri v. Nanna*, 972 F.Supp. 773, 794 (S.D.N.Y. 1997). Moreover, Sheriff Kevin Walsh's deposition does not contain any information indicating that Wasilewski had such authority.

Moreover, even assuming Wasilewski had such authority, the claims by plaintiffs concerning the alleged directive to Woloszyn to ignore plaintiffs' claims of race discrimination as a favor to his friend defendant Willis are nothing but sheer conjecture and speculation. There is not one shred of actual evidence that suggests that Wasilewski told Woloszyn not to investigate plaintiffs' claims. The fact that Wasilewski and defendant Willis may be friends is not dispositive of any fact, let alone that they conspired to prevent any action from being taken on plaintiffs' complaints. As a further matter, the fact the defendant Woloszyn testified that Wasilewski and Lieutenant Raus did not get along particularly well and that Wasilewski was not pleased with Raus having signed the original discrimination complaint along with plaintiffs does not mean as plaintiffs now contend that Wasilewski was more concerned with "getting" Lieutenant Raus than

11

addressing plaintiffs' complaints.  There is nothing in Woloszyn's deposition which suggests that Wasilewski was out to "get Raus" for anything.  Indeed, when asked, Woloszyn expressly stated that Wasilewski  "didn't blame" him, but that he was upset that Raus would not have tried to handle the plaintiffs' complaint first at the lowest level which was his job as the Lieutenant in charge.

Plaintiffs also attempt to assert a claim that the County has a custom, policy or practice of ignoring the presence of racially discriminatory and offensive comments made by its employees. The defendants argue correctly that plaintiffs abandoned their claims of discrimination and hostile work environment when they failed to file a lawsuit within 90 days of their first Notice of Right to Sue letter issued by the EEOC in this matter.  The only remaining claim plaintiffs have under Title VII is retaliation.  In any event, the various incidents of racial slurs and comments referenced by plaintiffs do not amount to a custom, policy or practice by the County.  Plaintiffs assert that defendant Willis claimed that sometime between 2000 and 2002, he was called "Nigger" by Nurse Finch, the wife of Sergeant Finch, who is not an employee of the County. Allissa Coglitore submitted an affidavit stating that "numerous officers" had used racial slurs. She heard Lieutenant Raus refer to Iraqi or Indian people as "sand Niggers" and then he showed a racist comic video clip.  Ms. Coglitore also heard Raus refer to an African-American Sergeant as an "uneducated Nigger" and she witnessed a deputy say "this is where we house all the Niggers." Ms. Coglitore said that she complained about Lieutenant Raus to a PSU investigator in the context of making a sexual harassment complaint about him.  Indeed, most of the facts in her affidavit relate to Raus stalking her and making inappropriate sexual remarks and overtures toward her.  It is unclear from Coglitore's affidavit how much and which details she shared with the PSU investigator regarding Raus' conduct.  To wit, her affidavit states "At this point,

12

although I had spoken to PSU investigator, it seemed the outcome to my complaint(s) would be unfounded.  This reinforced my feeling that nothing would be done to Lieutenant Raus."  The Court cannot say from this record that there is evidence that the County has a custom, policy or practice of habitually ignoring or failing to investigate racially offensive comments or slurs made by its employees.

Accordingly, the Court defendants' motion for summary judgment on plaintiffs' claim against the County under 42 U.S.C. § 1983 must be granted.

D.      Plaintiffs' Retaliation Claim Under Title VII

Plaintiffs assert that they were retaliated against when the Sheriff's Department ordered the PSU investigation of their complaints of racial harassment after they had filed complaints with the EEOC.  Title VII forbids an employer from retaliating against an employee for complaining of employment discrimination:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or, because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

In order to establish a *prima facie* case of retaliation, a plaintiff must present evidence that would permit a rational trier of fact to find that: 1) he engaged in protected participation or opposition under Title VII; 2) the employer was aware of this activity; 3) the employer took adverse action against the plaintiff; and 4) a causal connection between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-206 (2d Cir. 2006) (internal citations omitted).  Once a plaintiff establishes a *prima facie* case of retaliation, the

burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment action.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002).  If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational fact finder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.  *See id.*

Insofar as establishing their prima facie case of retaliation, plaintiffs have proven that they made a complaint of discrimination to the EEOC, and that the Sheriff's Department was aware of it.  The problem begins when plaintiffs endeavor to establish that they have suffered an adverse employment action.  According to plaintiffs, they were subject to the PSU investigation which required them to report for questioning and secure representation through their union.  They were questioned by a PSU investigator for 45 minutes to an hour regarding their EEOC charges, interviewed individually and "threatened with charges" for filing false statements with the EEOC. Indeed, only Deputies Cox and McCarty were advised that they could be charged by the Sheriff's Department with filing false statements based on the inconsistences between statements they provided to Sergeant Smith and the sworn statements provided to the EEOC.  However, it is undisputed that no such charges were ever filed.  Indeed, all of the plaintiffs were present when defendant Walsh testified that he had decided not to bring charges against the plaintiffs because doing so seemed "ridiculous."  As a further matter, none of the plaintiffs acknowledged receiving any decrease in work hours, pay or promotions as a result of the circumstances of this case. Based upon the preceding facts, the Court is hard pressed to discern the adverse employment action that plaintiffs are required to show to establish a *prima facie* case herein.

Assuming that the Court were to accept the plaintiffs' thinly veiled claim that even though no charges were ever actually filed against them, the threat of charges being filed was sufficient

to establish an adverse employment action, they are still required to establish the fourth element, that is, a causal connection or a retaliatory motive.  However, the County's written letter to the EEOC when answering plaintiffs' charges stated that it would be conducting the PSU investigation and this referral was made as part of the Sheriff's Department's official policy.  The written policy in effect at the time of the events in question provided that all investigations concerning harassment would be conducted by PSU.  This written policy acts has a tri-fold purpose in this case.  It deflates plaintiffs' claims concerning a retaliatory motive.  It establishes the County's legitimate, non-discriminatory reason for conducting the PSU investigation and eliminates the possibility of plaintiffs establishing pretext.

Based thereupon, the Court finds that defendants' motion for summary judgment on plaintiffs' Title VII retaliation claim should be granted and plaintiffs' cross-motion for the same relief should be denied.

E.      Remaining Claim under 42 U.S.C. § 1983 against Defendant Woloszyn

In their complaint, plaintiffs assert that they were treated differently than other deputies on account of their race and their right to Equal Protection was violated.  Specifically, they claim that defendant Willis started rumors in the jail amongst African American employees and inmates that they were "skinheads" after they shaved their heads in solidarity with fellow Deputy Kalin who was undergoing chemotherapy treatments.  They claim that these rumors subjected them to hostility and potential danger given the nature of their jobs.  With respect to defendant Wolosyzn, plaintiff's assert that he did not properly investigate their claims.

However, plaintiffs' mere allegations of a discriminatory failure to conduct a proper investigation are not enough to overcome summary judgment on their claims against defendant Woloszyn.  While it is undisputed that Woloszyn conducted an incomplete investigation for

which he was charged and demoted by the Sheriff's Department, plaintiffs have presented no evidence that there was anything insidious or discriminatory about his investigation that would violate the Equal Protection clause.  Moreover, plaintiffs cannot establish that other similarly situated individuals were treated differently than they were.  *See Levin v. Harleston*, 966 F.2d 85, (2d Cir. 1992) (affirming district court's grant of summary judgment dismissing a selective enforcement claim where the plaintiff could not establish that the defendant's failure to respond to the incidents at issue was any different than its failure to respond in similar circumstances); *Blount*, 2006 WL 3314635, at *14 (a showing that unrelated incidents were not identically handled to plaintiff's was not sufficient to raise an inference of discriminatory intent); *Walker v. Shepard*, 107 F.Supp.2d 183, 187 (N.D.N.Y. 2000) (granting summary judgment against the plaintiffs in a selective enforcement claim where they could not offer proof that they were treated differently than other crime victims).  That the investigation was insufficient is not enough evidence alone to raise an inference of discriminatory intent. *See Walker*, 107 F.Supp.2d at 189.

Issues of the inadequacy of investigation standing alone, without any proof of a violation of equal protection, cannot establish a Section 1983 claim.  Given the complete lack of evidence of an equal protection violation based on **discriminator**y failure to investigate, defendant Woloszyn's motion for summary judgment is granted as to plaintiff's 42 U.S.C. § 1983 claim against him.

F.    Claims under Defendants under NYHRL

Like Title VII, § 296 of the N.Y. Exec Law, the NYHRL, is, in essence, an employment discrimination statute, not an individual liability statute, even though individuals can, as noted, be liable under some circumstances. *Alexander v. Westbury Union Free School Dist.*, --- F Supp.2d --- ,2011 WL 5401806 at *21 (E.D.N.Y Nov. 4, 2011).  "Importantly, since it is the employer's

participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting, a plaintiff cannot prevail against an individual on her state claims unless she can first establish the liability of her employer." *Pellegrini v. Sovereign Hotels, Inc*., 740 F.Supp.2d 344, 356 (N.D.N.Y. 2010) (internal citations and punctuation marks omitted); *see also Jordan v. Cayuga County*, 2004 WL 437459, *4 (N.D.N.Y. 2004) (plaintiff may only recover under § 296(6) where she can show that defendant aided or abetted primary violation of NYHRL committed by another employee or the business itself). Here, there is no liability on part of the County under any of their NYHRL or Title VII claims, and thus any claim by plaintiffs against the individual defendants based on § 296(6) must fail must fail on that basis.

However, even if this was not true, plaintiffs have failed to establish liability against Woloszyn and Willis on the merits of their NYHRL claim. In order for a plaintiff to recover against an aider or abettor of NYHRL violations pursuant to § 296(6), he must establish "(1) that []he engaged in conduct protected by the NYHRL; (2) there is a causal connection between the protected conduct and the alleged [violations] of the NYHRL; and (3) that [the defendant] 'actually participated' in the discrimination." *Beattie v. Guilderland Cent. Sch. Dist*., 124 F.Supp.2d 802, 805 (N.D.N.Y. 2000) (citations omitted). In this case, there is no evidence that Woloszyn actually participated in the alleged discrimination against plaintiffs. His failure to conduct a complete investigation is not evidence that he acted or failed to act in a discriminatory fashion toward plaintiffs.

As a further matter, plaintiffs cannot establish a causal connection between their alleged complaints about being called "skinheads" by defendant Willis and any of the alleged violations that occurred of the NYHRL because as referenced above in connection with the discussion of their retaliation claim under Title VII, plaintiffs did not suffer any adverse employment action.

17

The requisite causal connection may be established by "showing that [a] retaliatory action was close in time to the protected activities; that other similarly situated employees were treated differently; or by offering direct proof of retaliatory animus." *Id.* at 450.  In this case, there was no retaliatory action - plaintiffs were never brought up on charges, they did not lose any time from work, nor did they lose benefits or promotions due to making a complaint in this case.  To the extent that they claim being subject to the PSU investigation was retaliatory, the County avers that it was standard policy to subject these types of harassment complaints to PSU for investigation.  And plaintiffs have come forth with no proof of retaliatory animus.  Consequently, their claims against Woloszyn and Willis under the NYHRL must be dismissed.

G.      Conspiracy Claim under 42 U.S.C. § 1985

In order to prevail under § 1985, a plaintiff must prove: "(1) a conspiracy; (2) for the purposes of depriving a person or class of persons the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); *see also Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 585-87 (2d Cir. 1988).  "In order to maintain an action under § 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.*" Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (citation and internal quotation marks omitted).  The Second Circuit has consistently held that a "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999). In this case, plaintiffs merely contend that since defendant Woloszyn met with "Chief

18

Wasilewski" they must have "come to a meeting of the minds" to deny plaintiffs equal protection of the laws and they did this with the acquiescence of defendant Willis "and possibly others." The only evidence plaintiffs point to in support of their claims in this regard is the testimony of Deputy Bingham who said that Lieutenant Raus told him that defendant Woloszyn tried to give plaintiffs' complaint back to him to investigate and told him to "squash" it.  By no stretch of the imagination, however, does this testimony establish a meeting of minds between defendants to deny plaintiffs' constitutional or any other rights.  This evidence is simply too vague to meet the heightened pleading requirements required to establish a conspiracy under 42 U.S.C. § 1985. Consequently, defendants' motion for summary judgment on this claim must be granted.

H.      Punitive Damages Against the Individual Defendants

        Defendants urge the Court to dismiss plaintiffs' punitive damages claims as none of the defendants were sued in their individual capacities.  The Court agrees that these claims should be dismissed since none of the individual defendants were on notice that they could be held personally liable.  Based thereupon, defendants' motion for summary judgment on plaintiffs' punitive damage claims is granted.

I.      Reinstatement of Plaintiffs' Claim Under 42 U.S.C. § 1981

        Plaintiffs seek reinstatement of their claim under 42 U.S.C. § 1981 which was previously dismissed by Senior Judge McCurn's prior Memorandum-Decision and Order.  Judge McCurn dismissed plaintiffs' § 1981 claim on the ground that such a claim could not be maintained by white citizens on behalf of themselves unless they were asserting the rights of fellow minority citizens.  Plaintiffs contend that the Supreme Court's decision in *McDonald v Sante Fe Trail Transp. Co.*, 427 U.S. 273 (1976) holds otherwise.  In *McDonald*, two white employees were fired for misappropriating cargo from their employer and sued after a black employee, who

committed the same offense was not discharged.  The plaintiffs alleged that they were discriminated against on account of their race.  The Court clearly held that 42 U.S.C. § 1981 was intended to apply to discrimination applied to white persons as well as minorities.  *See* 427 U.S. at 287 ( "First, we cannot accept the view that the terms of § 1981 exclude its application to racial discrimination against white persons.  On the contrary, the statute explicitly applies to 'All persons' (emphasis added), including white persons.") citing *United States v. Wong Kim Ark*, 169 U.S. 649, 675-676 (1898); *see also* 427 U.S. at 289 ("While it is, of course, true that the immediate impetus for the bill was the necessity for further relief of the constitutionally emancipated former Negro slaves, the general discussion of the scope of the bill did not circumscribe its broad language to that limited goal.  On the contrary, the bill was routinely viewed, by its opponents and supporters alike, as applying to the civil rights of whites as well as nonwhites.")  Based on the Supreme Court's holding in *McDonald* and its progeny, the Court will grant plaintiffs' motion to reinstate their claim under 42 U.S.C. § 1981.

a.      Applicable Legal Standard

Title 42 U.S.C. s 1981 provides in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens. . . ."  This section prohibits discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment.  *See, e.g., Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68–69 (2d Cir. 2000).  Except for certain differences not applicable here, "the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 .... " *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir.2004) (citations omitted).  It is well-

20

established that courts must evaluate claims of discrimination brought under Title VII according to the three-step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973), and later refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), among other cases.

b.      Preliminary Legal Burden

Because the plaintiffs in this case are covered by the terms of a collective bargaining agreement between the County and their union, the Court need not address the threshhold question of whether a contract exists for the purposes of § 1981.  *See Lauture v. Int'l Bus. Mach. Corp.*, 216 F3d 258, 263-64 (2d Cir. 2000).

c.      Hostile Work Environment

Section 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment.  See *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir.1987).  As under Title VII, "[a] hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive." *Id.; see also Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 347 n. 2 (7th Cir.) ("In analyzing § 1981 claims, we apply the same standards as in Title VII cases."), *cert. denied*, 528 U.S. 874 (1999).  "In order to survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) (internal quotation marks omitted).

Incidents that are "few in number" and that occur "over a short period of time" may fail to demonstrate a hostile work environment. *Lopez*, 831 F.2d at 1189; *see Schwapp v. Town of Avon*,

118 F.3d 106, 110 (2d Cir.1997) ("[i]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments" (internal quotation marks omitted)).  At the same time, "[i]t is not how long the sexual innuendos, slurs, verbal assaults, or obnoxious course of conduct lasts.  The offensiveness of the individual actions complained of is also a factor to be considered in determining whether such actions are pervasive." *Carrero v. New York City Housing Auth.*, 890 F.2d 569, 578 (2d Cir. 1989).

To withstand summary judgment, a "plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz*, 202 F.3d at 570 (internal quotation marks omitted).  In the end, "[d]etermining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances." *Id*.

In this case, the record demonstrates that as far as admissible evidence, the only thing plaintiffs have submitted in support of their claim of a hostile work environment is the deposition testimony of Deputy McCarty wherein he states that Deputy Paul told him that "Your boy Willis is starting rumors" concerning the plaintiffs allegedly being skinheads.  McCarty also said that two other African-American deputies asked him why he had shaved his head and after he explained that it was in support of Deputy Kalin, they asked no further questions.  Deputy McCarty stated that the day after he spoke to Deputy Paul about the alleged rumor started by defendant Willis, he was moving inmates and one of the inmates asked him if he was "one of those skinheads."  Other than plaintiffs' vague claims that they heard "rumors" from unnamed persons in this case, there is no actual evidence in the record that suggests plaintiffs were called names or threatened or intimidated by specific people at anytime regarding their appearance or

because of their race in this case.  Moreover, none of the plaintiffs testified or suggested that the alleged hostility interfered with their work or affected their mental or emotional state.  Based on the absence of evidence suggesting that the circumstances of plaintiffs' work environment were so threatening or humiliating as to have adversely altered the terms of their employment or work conditions, the Court finds that a reasonable jury could not find that a hostile work environment existed in the context of plaintiffs' claim under 42 U.S.C. § 1981.

d.      Municipal Policy or Custom of Discrimination and Retaliation

The Court has already discussed the absence of evidence in the record to support plaintiffs' claims for either retaliation under Title VII or a custom or policy of discrimination by the County under 42 U.S.C. § 1983.  Based thereupon, their identical claims under § 1981 must likewise be dismissed.

e.      Disparate Treatment

Courts analyze claims of disparate treatment under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Fitzgerald v. Henderson*, 251 F.3d 345, 356 (2d Cir. 2001).  The plaintiff must first establish a *prima facie* case by demonstrating that: (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  If the plaintiff demonstrates a *prima facie* case, the burden shifts to the defendant employer to provide a legitimate, non-discriminatory reason for the action.  *Id.* at 802-04.  If the defendant makes such a showing, the burden shifts back to the plaintiff to prove discrimination, for example, by showing that the employer's proffered reason is pretextual.  *Id.* at 804.

As discussed above in connection with plaintiffs' retaliation claims under Title VII, there

is no evidence in this record that they suffered any adverse employment action in this case.

Moreover, to the extent that the PSU investigation can by some stretch be considered an adverse

employment action as argued by plaintiffs, defendants have explained that said investigation was

pursuant to standard Sheriff's department policy.  Plaintiffs have not proffered any evidence

which demonstrates that this reason is pretext - that is that the real reason plaintiffs were

subjected to further questioning is the PSU investigation was discrimination.  As a further matter,

plaintiffs have not demonstrated that any similarly situated deputies who made complaints of

harassment were treated differently.  Based thereupon, their complaints of disparate treatment, to

the extent that they may be heard to make out such a claim under 42 U.S.C. § 1981, must be

dismissed.

e.    Individual Defendants in their Individual Capacities

        "In order to make out a claim for individual liability under § 1981, a plaintiff must

demonstrate 'some affirmative link to causally connect the actor with the discriminatory action.'"

*Whidbee v. Garzarelli Food Specialities, Inc*., 223 F.3d at 75 (quoting *Allen v. Denver Public*

*School Bd.*, 928 F.2d 978, 983 (10th Cir. 1991)).  This is accomplished by showing that an actor

is personally involved in the discriminatory activity.  *Hicks v. IBM*, 44 F.Supp.2d 593, 597

(S.D.N.Y.1999).  *Whidbee*, 223 F.3d at 75 (Mere negligence "does not constitute the 'personal

involvement' or 'affirmative link' necessary to support a claim of individual liability.").  In this

case, there are no factual allegations suggesting that defendants Walsh, Pirro or Mahoney had any

personal involvement in the alleged discriminatory conduct.  And although it is undisputed that

defendant Woloszyn did not complete his investigation of plaintiff's complaints, as referenced

above, there is no evidence he failed to do so out of discriminatory animus or motive toward

plaintiffs.  In connection with defendant Willis' alleged remarks to Deputy Paul that plaintiffs were skinheads, it is undisputed that none of the plaintiffs actually heard this comment and it is the only actual evidence in the record that any of the plaintiffs can point to which suggests that defendant Willis made a racist comment directed at them.  In light of the totality of the circumstances, the Court finds that this single comment was not "sufficiently humiliating" as to alter the conditions of plaintiffs' employment.  *See Patterson v. County of Oneida*, 375 F.3d 206, 229-30 (2d Cir. 2004).  Thus, there are no questions to be answered by a fact finder.

IV.    CONCLUSION

Based on plaintiffs' failure to oppose defendants' motion papers concerning the following relief sought by defendants, it is hereby

ORDERED that defendants' motions for summary judgment  (Dkt Nos. 70 and 71) are GRANTED; and it is further

ORDERED that plaintiffs' cross-motion for summary judgment on their retaliation claim under Title VII (Dkt. # 94) is DENIED; and it is further

ORDERED that plaintiffs' request for reinstatement of their previously dismissed claim under 42 U.S.C. § 1981 is GRANTED but the Court finds that all aspects of this claim must be *sua sponte* dismissed; and it is further

ORDERED that plaintiffs' complaint is dismissed in its entirety with prejudice.

IT IS SO ORDERED.

Date: March 29, 2012

Honorable Norman A. Mordue
U.S. District Judge

25